Heibert **ROJAS–HERNANDEZ,**
Plaintiff, Appellant,

v.

**PUERTO RICO ELECTRIC POWER
AUTHORITY, et al., Defendants,
Appellees.**

No. 90–1419.

United States Court of Appeals,
First Circuit.

Heard Nov. 6, 1990.
Decided Feb. 4, 1991.

John E. Mudd, with whom Ortiz Toro &
Ortiz Brunet, was on brief, for plaintiff,
appellant.

Vicente Santori Coll with whom Victor J. Casal Vazquez, was on brief, for defendant, appellee Cooperativa Jardines De San Ignacio.

Pedro Santiago–Torres, for defendant, appellee Puerto Rico Elec. Power Authority.

Before CAMPBELL, TORRUELLA and CYR, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

■ Rojas–Hernandez appeals from the district court's denial of his motion to set a trial date in his action against Puerto Rico Electric Power Authority and Cooperativa Jardines de San Ignacio. Because the district court's decision to delay the trial in the federal case until after the ending of a related proceeding pending in the courts of the Commonwealth of Puerto Rico may deprive the plaintiff of a federal forum in which to litigate his claim, and has led to unnecessary delay in the federal action, we hold that the order is, in effect, a surrender of federal jurisdiction and is reviewable under *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1982). Applying the six factors articulated by the Supreme Court in *Moses H. Cone*, 460 U.S. at 23–26, 103 S.Ct. at 941–42, and *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 818–19, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1975), we further hold that, to the extent that the district court's order was intended to suspend the federal action until the conclusion of the related commonwealth proceedings, it was an unjustified relinquishment of federal jurisdiction and must, therefore, be vacated.

## I.

Plaintiff-appellant's eleven-year-old son was injured when he entered a cabinet containing uninsulated high voltage wires. The cabinet was owned and operated by defendant-appellee Puerto Rico Electric

Power Authority (PREPA) and was located on the premises of defendant-appellee Cooperativa Jardines de San Ignacio, a cooperative housing project. The boy and his family lived in one of the units of this housing development.

On April 21, 1988, the boy's mother, Hilda Amadeo–Santiago, filed a complaint in the Superior Court of San Juan on behalf of her injured son, herself, and her other minor child. On the same date, the boy's father, Heibert Rojas Hernandez, filed this action in the United States District Court for the District of Puerto Rico, claiming mental anguish for the injuries of his son.[1] As plaintiff is a citizen of Colombia, federal jurisdiction is premised on diversity of citizenship, 28 U.S.C. § 1332. The principal defendants are the same in both actions.

The parties have conducted extensive discovery. Because the witnesses to be presented by all parties were the same in both the commonwealth and the federal actions, the parties agreed that all depositions could be used in both suits. Therefore, as the parties concede, the suits have proceeded at roughly the same pace. On January 18th, 1989, plaintiff-appellant Hernandez filed a motion requesting that a trial date be set in the federal case. On January 25th, 1990, defendant-appellee Cooperativa Jardines de San Ignacio filed a "Motion in Opposition to Plaintiff's Motion Requesting Trial Date." Therein the appellee requested that the district court "deny motion requesting trial date until the end of the State Court proceedings." On March 26th, the district court wrote "denied" in the margin of appellant's motion for a trial date and "granted" in the margin of appellee's motion in opposition. Plaintiff filed a timely notice of appeal from the March 26th order.

## II.

### A. Jurisdiction

■ As a threshold matter, we must determine whether we have jurisdiction to

---

**1.** Under Puerto Rico tort law, family members have a personal cause of action for moral damages and anguish they suffer as a result of their relative's injury. *See, e.g., Caez v. U.S. Casualty Co.*, 80 P.R.R. 729, 734 (1958) (holding that "[t]he material and moral damages caused by the unlawful death of a human being may affect several persons, and in such case each acquires an independent action against the person causing the unlawful death").

review the district court's denial of plaintiff's motion. Ordinarily, an order denying a motion to set a trial date would not be appealable as it would not be a final decision within the meaning of 28 U.S.C. § 1291.[2] Were the district court's order simply a response to the status of the federal suit, we would not have jurisdiction to review the order. Moreover, the postponement of the federal trial until after the resolution of the parallel state proceeding does not, by itself, bring the order within the appellate jurisdiction of this court. The fact that a parallel state court action is proceeding and, if resolved before the federal action, would be res judicata in the federal case, does not, of course, obligate the federal district court to schedule trial prematurely to preserve a federal forum for the claim. *Cf. Kline v. Burke Constr. Co.*, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922) (rejecting the potential res judicata effects of the adjudication of a parallel state proceeding as a basis for enjoining the state proceeding in order to protect the plaintiff's federal forum).

█ In this case, however, the district court did not simply deny as premature the plaintiff's request for a trial date. Rather, the court granted defendant-appellee's motion requesting denial of a trial date "until the end of the State Court proceedings." By granting the defendant-appellee's motion, the district court linked the trial date in federal court to the progress of the commonwealth suit rather than to the readiness of the federal case for trial. In so doing, the district court apparently anticipated that resolution of the commonwealth suit would facilitate (or perhaps make unnecessary) any trial of the plaintiff's claim in federal court.[3] We conclude, therefore, that the district court's denial of plaintiff's motion to set a trial date was, in effect, a stay of the federal proceedings

until after the resolution of the state court proceedings.

In *Moses H. Cone*, 460 U.S. 1, 103 S.Ct. 927, the Supreme Court held that a stay in federal court pending the resolution of a state suit is appealable when the res judicata effect of the judgment in state court would preclude further litigation in federal court. *Id.* at 10, 103 S.Ct. at 933. Thus, if the judgment in the Puerto Rico Superior Court would be res judicata in the federal district court, the postponement would render the federal plaintiff "effectively out of court," *Moses H. Cone*, 460 U.S. at 10, 103 S.Ct. at 934 (quoting *Idlewild Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n. 2, 82 S.Ct. 1294, 1296 n. 2, 8 L.Ed.2d 794 (1962)), and the order would be reviewable as a final order under § 1291. *See* 460 U.S. at 10, 103 S.Ct. at 933.

Plaintiff-appellant argues on appeal that the Superior Court judgment would not be res judicata in federal court. It is well-settled that state law determines the preclusive effect to be given a state judgment in federal court. *See, e.g., Migra v. Warren City School Dist. Board of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Oliveras v. Miranda Lopo*, 800 F.2d 3, 6 (1st Cir.1986). P.R.Laws Ann. tit. 31, § 3343, Puerto Rico's res judicata statute, provides:

> In order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

Although appellant acknowledges that the "object and the causes of action are the same, inasmuch as they derive from the same set of facts and circumstances," he

**2.** Section 1291 provides in relevant part:
  The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where direct review may be had in the Supreme Court.

**3.** Defendant-appellee's motion in opposition to plaintiff's request for a trial date had reasoned:

> In synthesis, an adjustment of the civil action filed in the State Court, which is the substantial claim, will contribute to secure a just, speedy and inexpensive determination of the federal claim.

In granting the motion, we may infer the district court found this reasoning persuasive.

points out that the suits involve different parties—he is a party in the federal suit only, not in the commonwealth suit.

Appellees contend, however, that the appellant has been named in the commonwealth suit as a third party defendant for his alleged failure to supervise his son. As such, he would have the opportunity to litigate his claim against defendants in the state forum. His participation in the commonwealth action would ensure that the purpose underlying the identity of parties requirement would be met—the party's rights and obligations would not be determined without his knowledge and an opportunity for participation. *See Futura Development Corp. v. Centex Corp.,* 761 F.2d 33, 43 (1st Cir.1985). Assuming that the appellant is now a party in the commonwealth suit, the criteria for claim preclusion under Puerto Rico law appear to be met. If so, the district court's delay of the trial in federal court will most likely operate to deprive the appellant of a federal forum for his claim. Therefore, the order is appealable under the doctrine of *Moses H. Cone,* 460 U.S. at 10, 103 S.Ct. at 933.

There was, however, some dispute at oral argument as to whether process had actually been served on appellant, joining him in the suit in the local court. The record on appeal does not reveal the appellant's status in that proceeding. We hesitate, therefore, to base our assertion of jurisdiction merely on the possibility that the judgment in the commonwealth court may have res judicata effect in federal court. Alternatively, we note that this Court has not interpreted the appealability rule in *Moses H. Cone* to turn solely on the preclusive effects of the state court judgment. In *National Railroad Passenger Corp. v. Providence and Worcester Railroad Co.,* 798 F.2d 8, 10 (1st Cir.1986), we held that "[w]hen ... no res judicata problem is presented, a stay order nevertheless may be appealable if the appellant is effectively rendered out of federal court through the indefinite unnecessary delay inherent in the stay order." *See also American Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.,* 743 F.2d 1519, 1523–24 (11th Cir. 1984); *CTI–Container Leasing Corp. v.*

*Uiterwyk Corp.,* 685 F.2d 1284 (11th Cir. 1982); *Hines v. D'Artois,* 531 F.2d 726 (5th Cir.1976).

The stay in this case has subjected and will subject the appellant to an indefinite delay in its federal proceeding—a delay tied not into the usual considerations of the federal court's calendar but rather to those arising in the state proceeding. Although a trial date was set in the state court proceeding for December 14, 1989, that date passed without trial. At the time this case was argued on appeal, in November, 1990, the trial in superior court had not taken place. At oral argument, appellant informed this court that another trial date had been set for February, 1991. Whether or not the trial in the commonwealth court takes place in the near future, plaintiff's trial has already been delayed almost a year since the entry of the district court order on March 27, 1990, and further delays may arise while an opinion is awaited and an appeal taken. Moreover, should the superior court judgment for some reason not have preclusive effect on all issues in the federal court action, the delay will not even have served the goal of judicial economy—the district court will still be obliged to consider plaintiff's claims de novo at the conclusion of the state proceeding.

In sum, regardless of our assumption concerning the res judicata effect of a judgment in commonwealth court, the district court's order is reviewable under *Moses H. Cone.* Having concluded that we have jurisdiction to review the district court order, we turn to substantive issues raised by this appeal.

B. *Application of the Colorado River Doctrine*

■ It is well-settled that "[w]here a suit is strictly *in personam,* both a state court and a federal court having concurrent jurisdiction may proceed with the litigation...." *Penn General Casualty Co. v. Pennsylvania,* 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935). In *Colorado River Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1975), the Supreme Court ar-

ticulated a narrow exception to this rule in which, under certain limited circumstances, a district court may dismiss a federal suit due to the presence of a concurrent state proceeding for reasons of "wise judicial administration." *Id.* at 818, 96 S.Ct. at 1246. The Court nevertheless acknowledged the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *id.* at 817, 96 S.Ct. at 1246, and cautioned that "[o]nly the clearest of justifications will warrant dismissal." *Id.* at 819, 96 S.Ct. at 1247.

In *Colorado River,* the Court listed four factors that may counsel against the exercise of jurisdiction: 1. whether property is involved in the litigation; 2. the inconvenience of the federal forum; 3. the desirability of stopping piecemeal litigation; and 4. the order in which jurisdiction was obtained by the courts. 424 U.S. at 813, 96 S.Ct. at 1244. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1982), the Court added two more elements: 5. whether federal law or state law controls, and 6. whether the state forum will adequately protect the interests of the parties. 460 U.S. at 25–26, 103 S.Ct. at 941–42. The Court also instructed that "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case...." *Id.* at 16, 103 S.Ct. at 937. In this case, such a balancing supports the exercise of federal jurisdiction.

The first three factors cited by the Supreme Court in *Colorado River* do not counsel against the exercise of jurisdiction here. Property is not involved in this case—this is not a proceeding in rem. The federal forum is no less convenient than the state forum—both courts are located in the same city. Also, the courts obtained jurisdiction simultaneously—both actions were filed on the same day and they have progressed at roughly the same pace.

Neither of the two factors added by the Court in *Moses H. Cone* weighs in favor of the surrender of federal jurisdiction. Al-

though the case involves only issues of commonwealth law, the same would be true of any case in which federal jurisdiction is based on diversity. While noting that "the presence of federal-law issues must always be a major consideration weighing against surrender," the Court stated that only in "rare circumstances [will] the presence of state-law issues weigh in favor of that surrender." *Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. at 942. No such "rare circumstances" are discernible here. The suit involves a relatively straightforward claim for damages under Puerto Rico tort law—the issue is neither unsettled nor complex. The second factor added in *Moses H. Cone,* the adequacy of the state forum, operates against the surrender of jurisdiction only where the state forum may not be adequate to adjudicate the claims. Again, that situation does not exist here.

■ The only factor that may possibly weigh in favor of the surrender of jurisdiction in this case is the possibility of piecemeal adjudication. Both actions here derive from the same transaction, involve the same parties and the same causes of action. Litigating appellant's claim in federal court and his family's claims in commonwealth court will result in duplication and a less than efficient allocation of judicial resources. Nevertheless, under *Colorado River* and *Moses H. Cone,* such inefficiency as results merely from a duplication of effort will not, by itself, justify the surrender of federal jurisdiction. Rather, the narrow exception exists only where piecemeal adjudication gives rise to special complications. *See Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247 (emphasizing the federal policy of avoiding piecemeal adjudication of water rights given the highly interdependent nature of such claims).

Applying the *Colorado River* doctrine, this Circuit has distinguished between the problems created by piecemeal adjudication and the mere duplication of proceedings, giving most weight to this factor where piecemeal litigation could severely prejudice one of the parties. *See, e.g., Liberty Mutual Ins. Co., v. Foremost–McKesson,*

*Inc.,* 751 F.2d 475, 477 (1st Cir.1985) (noting that inconsistent determinations in parallel proceedings could leave litigant "without sufficient insurance coverage after years of paying premiums"); *see also Gonzalez v. Cruz,* 926 F.2d 1, 4 (1st Cir.1991) (noting complications for insurer that might result from inconsistent determinations of liability in the federal suit against alleged tortfeasor and the commonwealth suit against insurance company); *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 915 F.2d 7, 16 (1st Cir.1990) (suggesting that "the district court must look beyond the routine inefficiency that is the inevitable result of parallel proceedings to determine whether there is some *exceptional* basis for requiring the case to proceed entirely in [state] court") (emphasis supplied).

 In this case, the parallel proceedings in commonwealth and federal court do not create significant potential for prejudice from piecemeal litigation. Judgment in one case may be res judicata in the other, thereby ensuring consistency. On the other hand, even if the cases are resolved inconsistently, there is no risk of result as harsh as those with which we were concerned in *Liberty Mutual.* Moreover, unlike the determination of water rights at issue in *Colorado River,* inconsistent results here would be unlikely to give rise to further litigation. Thus, the possibility of duplicative or piecemeal adjudication in this situation does not justify the surrender of federal jurisdiction, particularly given the absence of any other factor weighing in favor of such a surrender.

### III.

The Supreme Court cautioned in *Moses H. Cone,* "[O]ur task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to

ascertain whether there exist 'exceptional circumstances,' . . . justify[ing] the *surrender* of that jurisdiction." 460 U.S. at 25–26, 103 S.Ct. at 941–42. Having concluded that such "exceptional circumstances" are absent in this case, we vacate the district court's order and remand with instructions that the federal case should progress without being linked to the status of the parallel case in commonwealth court,[4] at least until a judgment is obtained in that case which would operate to preclude appellant's claim in federal court.

*Vacated and remanded. Costs to appellants.*

---

4. We do not mean to suggest that, where all parties agree, a federal court may not feel free to coordinate its proceedings with those in a state court. Nor, as we have previously indicated, need a federal court rush to trial first, in order specially to accommodate the wishes of a federal plaintiff. We hold merely that, in an adversarial situation such as this, plaintiff is entitled to have his case move forward in ordinary course without linkage to the state proceeding.